UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
ROBERTO CIAPRAZI,                                       :
                                                        :
                    *Plaintiff,*                        :
                                                        :
                  - against -                           :
                                                        :
ALLAN JACOBSON, R. WILLIM, MARY J.                      :
D'SILVA, CARL J. KOENIGSMANN,                           :
BRIAN FISCHER,                                          :
                                                        :
                    *Defendants.*                       :
--------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-6-16

13 Civ. 4813 (PAC) (KNF)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Roberto Ciaprazi seeks damages and injunctive relief, pursuant to 42 U.S.C. § 1983, against Dr. Allan Jacobson and Dr. Reinhard Willim, dentists at Sing Sing Correctional Facility; Dr. Mary J. D'Silva, Director of Correctional Dental Services for New York State Department of Corrections and Community Supervision (DOCCS); Dr. Carl J. Koenigsmann, DOCCS Chief Medical Officer; and Brian Fischer, DOCCS Commissioner. Ciaprazi alleges defendants (1) maintained an unconstitutional and unlawful dental policy of denying restorative treatments, such as root canals, to all posterior teeth, providing extraction as the only treatment for all posterior teeth that may otherwise be restored; and (2) violated his Eighth Amendment rights when they showed deliberate indifference to his dental needs by enforcing this unconstitutional dental policy against him.[1] Defendants moved for summary judgement. The matter was referred to Magistrate Judge Kevin Nathaniel Fox for a Report and Recommendation (R&R).

---

[1] "[T]he issue in this case is whether the defendants violated the plaintiff's right to adequate dental care by enforcing a dental policy alleged to be unconstitutional." Pl. Resp. at 1 (alterations omitted) (quoting R&R at 19). More specifically, Ciaprazi alleges that from 2011 to 2013, Drs. Jacobson and Willim provided him with inadequate dental care in treating his teeth # 2, # 13, and # 20, Compl. ¶¶ 103, 105–06, 108–09, and that Dr. D'Silva, Dr. Koenigsmann, and Commissioner Fischer enforced the unconstitutional policy and failed to take corrective measures after he complained to them about Drs. Jacobson and Willim, *id.* at ¶¶ 104, 107, 110–11.

On March 29, 2016, the Magistrate Judge issued his R&R that the Court deny defendants' motion for summary judgment on three principle grounds. First, the Magistrate Judge found that there is a genuine issue of material fact as to whether DOCCS dental services include root canals and "whether restorative treatment was permitted, covered or necessary in the circumstances of the plaintiff's case." R&R at 18. Second, he found that Commissioner Fischer had exhibited sufficient personal involvement to be found liable under § 1983. *Id.* at 19. And third, Magistrate Judge Fox concluded that because questions remain about the contents of DOCCS dental policy, granting summary judgment on the grounds of qualified immunity is not warranted. *Id.* at 19–20.

Defendants filed timely objections. *See* Fed. R. Civ. P. 72(b)(2). Reviewing *de novo* those portions of the R&R to which defendants object, the Court concludes that defendants are entitled to summary judgment.

## I.    Legal Standards

### a.  Review of Objections

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). When a timely objection is made to the magistrate judge's R&R, the Court must review the contested portions *de novo*, but it "may adopt those portions of the [R&R] to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

### b.  Summary Judgment Standard

On a motion for summary judgment, "[i]t is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's factor." *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003) (citing *Adickes v. S.H. Kress*

2

& Co., 398 U.S. 144, 157 (1970)). "[W]here the movant 'fails to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." *Id.*

### c. Eighth Amendment

Under the Eighth Amendment's prohibition of "cruel and unusual punishments," states must provide inmates adequate medical care, including adequate dental care, *see Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (medical care); *Chance v. Armstrong*, 143 F.3d 698, 703–04 (2d Cir. 1998) (dental care). Although "not every lapse in medical care is a constitutional wrong," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), "the Eighth Amendment forbids not only deprivations of medical care that produce physical torture and lingering death, but also less serious denials which cause or perpetuate pain," *Todaro v. Ward*, 565 F.2d 48, 52 (2d Cir. 1977) (finding it "well-settled in this circuit that 'a series of incidents closely related in time . . . may disclose a pattern of conduct amounting to deliberate indifference to the medical needs of prisoners'"). Cognizable claims of inadequate dental care "can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Rashid v. McGraw*, 2006 U.S. Dist. LEXIS 30611, *19 (S.D.N.Y. May 18, 2006). "[B]ecause a tooth cavity will degenerate with increasingly serious implications if neglected over sufficient time, it presents a 'serious medical need' . . . ." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000).

To prevail on a § 1983 claim against prison officials, a plaintiff must prove that each defendant "kn[ew] that inmates face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

3

A prison official's "requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

### d. Personal Involvement

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). A plaintiff may demonstrate a defendant's "personal involvement" by showing:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* (citing *Wright*, 21 F.3d at 501). Although the "mere receipt of a letter from a prisoner is insufficient to establish individual liability, an official's actions and responses arising out of a grievance may." *Bodie v. Morganthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004). "Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).

### e. Qualified Immunity

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The right

that the plaintiff claims was violated must be clearly established "at the time of the conduct at issue." *Davis v. Scherer*, 468 U.S. 183, 197 (1984). Although the Eighth Amendment broadly guarantees an inmate's right to adequate medical care, *see Estelle*, 429 U.S. at 104, and to adequate dental care, *see Chance*, 143 F.3d at 703–04, the qualified-immunity inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Anderson v. Creighton*, 483 U.S. 635, 640 ("[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense.").

## II.   Analysis

### a.   DOCCS Dental Policy

Magistrate Judge Fox found that genuine issues of material fact preclude summary judgment on whether DOCCS dental policy is constitutional because (1) the record contains contradictory statements about DOCCS dental policy; (2) the record does not establish that DOCCS dental policy is similar to other states' dental policies; and (3) the record does not contain admissible evidence establishing the community standard of care in New York or that DOCCS dental policy mirrors New York Medicaid. Defendants object to each of these findings.

Drs. Jacobson, Stukes, and D'Silva each submitted declarations regarding DOCCS dental policy. All three dentists stated that posterior root canals are not included in the scope of services provided by DOCCS.[2] Magistrate Judge Fox, however, found that those statements were contradicted by Dr. D'Silva's statement that "[a] treating dentist may request permission from DOCCS

---

[2] *See* Jacobson Decl. ¶ 15 ("Plaintiff requested a root canal, post, core, and crown on a badly broken down tooth # 2. These services are not included in the scope of services identified in HSPM # 2.01, nor were they clinically recommended because the tooth was so badly broken down."); Stukes Decl. ¶ 11 ("Plaintiff requested a root canal and crown [on tooth # 20]. . . . I advised him that not only are these services not recommended, they are not covered under DOCCS' scope of services. These serves are not clinically recommended because the tooth was so badly broken down . . . ."); D'Silva Decl. ¶ 5 ("Posterior root canal therapy is not in the scope of services provided by HSPM #2.01.").

to perform a root canal on a posterior tooth, especially in circumstances where a root canal is necessary to prevent a serious risk of harm to a patient's medical health." D'Silva Decl. ¶ 6. But read in context, Dr. D'Silva's statement simply outlines a reasonable exception to the general policy that "[p]osterior root canal therapy is not in the scope of services" provided by DOCCS. *Id.* ¶ 5. There is no contradiction.

Dr. D'Silva attested that DOCCS scope of services mirrors the policies of other states and localities. *Id.* ¶ 7. Magistrate Judge Fox, however, disregarded Dr. D'Silva's statements because she "does not explain the basis of her knowledge, apart from suggested hearsay, about the services provided by state and local prisons in states other than New York." R&R at 13–14. But Dr. D'Silva explained that her personal knowledge comes from her responsibilities as DOCCS Dental Director, which include communication with other dental directors at state prisons throughout the country. D'Silva Decl. ¶ 7. There is no suggestion of hearsay. Indeed, it is wholly unsurprising that DOCCS Dental Director, by virtue of her position, would read and familiarize herself with other states' dental policies. *See Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 764 (2d Cir. 1991) ("The test is whether a reasonable trier of fact could believe the witness had personal knowledge.").

Dr. D'Silva further attested that DOCCS scope of services mirrors the policy and procedures provided by New York State Medicaid, which is the community standard of care in New York, and that root-canal therapy for posterior teeth is not in the scope of services provided by New York State Medicaid. D'Silva Decl. ¶¶ 4–5. Magistrate Judge Fox again disregarded Dr. D'Silva's statement because he thought she had not explained the basis of her knowledge of New York State Medicaid's policy or procedures. R&R at 13. But a factfinder could reasonably infer that DOCCS Dental Director would be familiar with the community standard of care in New York. And it is further reasonable to infer that, if New York State Medicaid is the community standard

of care, DOCCS Dental Director would be aware of the scope of services provided by Medicaid. The problem with Dr. D'Silva's testimony, however, is the document she attached in support of it. As noted by Ciaprazi, Pl. Resp. at 6, the purported Medicaid Dental Policy and Procedural Code Manual does not, in fact, mirror DOCCS dental policy as described by Drs. Jacobson, Stukes, and D'Silva. Whereas the declarants described DOCCS policy as not covering *posterior* root canals, the Medicaid Dental Policy and Procedural Code Manual lists only *molar* root canals as falling outside the scope of services. D'Silva Decl., Exh. B at 9.

But this one apparent discrepancy is not sufficiently material to preclude summary judgment. It is undisputed that posterior root canals do not fall within the scope of services provided by DOCCS. Jacobson Decl. ¶ 15; Stukes Decl. ¶ 11; D'Silva Decl. ¶ 5; *see also* D'Silva Decl. Exh. A at DOCCS 0058 (listing endodontic therapy for *ancillary* teeth only). It is undisputed that inmates can seek treatments that fall outside the scope of services from an outside provider. Jacobson Decl. ¶ 15; Stukes Decl. ¶ 11; D'Silva Decl. ¶ 5. And it is undisputed that DOCCS dental policy mirrors those of many other state and local prisons. D'Silva Decl. ¶ 7 ("To the best of my knowledge, the following state correctional facilities do not include root canal therapy on posterior teeth in their scope of services: Alabama, Alaska, Georgia, Idaho, Iowa, Kansas, Kentucky, Louisiana, Maine, Minnesota, Mississippi, Missouri, Nebraska, Nevada, North Dakota, Oklahoma, South Dakota, Texas, Utah, West Virginia, Wisconsin, and Wyoming."). There is no genuine dispute of material fact regarding the content of DOCCS dental policy, so the Court cannot accept the Magistrate Judge's recommendation to deny summary judgment on that basis.

### b.  Ciaprazi's Dental Treatment

Ciaprazi contends that "dentists at Sing Sing knew about [his] problems with Teeth Nos. 2, 13, and 20 since as early as March 2007," but "refused to provide [him] the prescribed [root

7

canal] treatment," and instead "pushed extraction as the only option." Pl. Resp. at 17. He contends

that there remain questions of material fact as to whether extraction was in fact the only course of

treatment available to him "regardless whether [he] was treated by a prison or outside dentist." *Id.*

at 17–18. But even if Ciaprazi's teeth could have been treated with root-canal therapy,[3] it would

not violate the Eighth Amendment for DOCCS to offer him only extraction. As noted by Dr.

D'Silva, many states and localities have policies of offering extraction and not root canals. D'Silva

Decl. ¶ 7. And many of those policies—a number of which are even more restrictive than New

York's—have been held to satisfy the Eighth Amendment.[4] Ciaprazi, on the other hand, points to

no similar policies that have been struck down. Rather, his claim boils down to a dispute over the

choice of one routine medical procedure over another, which does not give rise to an Eighth

---

[3] Drs. Jacobson and Stukes declared that root-canal therapy was not "clinically recommended." Jacobson Decl. ¶ 15; Stukes Decl. ¶ 11. Ciaprazi claims that these statements are contradicted by his medical charts. *See, e.g.*, Jacobson Decl. Exh. A at DOCCS 0142. The Court need not resolve this dispute.

[4] *See James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197–98 (3d Cir. 2007) (affirming that there was no Eighth Amendment claim for an extraction that was within the Pennsylvania Department of Corrections' policy of providing for extractions and not root canals), *cert. denied*, 552 U.S. 1067 (2007); *Gomez v. Westchester Cnty.*, No. 12 Civ. 6869, 2015 WL 1054902, at *10–11 (S.D.N.Y. Mar. 10, 2015) (Westchester County Jail's refusal to pay for root canals and crowns did not state an Eighth Amendment claim); *Hayes v. Kootenai Cnty.*, No. 10 Civ. 64, 2013 WL 1290952, at *12 (D. Idaho Mar. 27, 2013) (upholding the county jail's policy of offering only temporary fillings and extractions, in part because the inmates "are not entitled to unqualified access to unqualified dental care"); *Galindo v. Cate*, No. 11 Civ. 23, 2011 WL 6100623, at *3, *6 (E.D. Cal. Dec. 5, 2011) (screening order) (dismissing deliberate indifference claim against the dentists when they were not allowed to perform root canals in the California Department of Corrections system, but could extract the tooth); *Bain v. Hsu*, No. 06 Civ. 189, 2010 WL 3927589, at *1–5 (D. Vt. Sept. 29, 2010) (concluding that Vermont Department of Corrections' policy of providing extractions and not root canals or crowns does not violate the Eighth Amendment); *Koon v. Ubah*, No. 8:06 Civ. 2000, 2008 WL 724041, at *7 (D.S.C. Mar. 17, 2008) (holding that there was no Eighth Amendment violation where the South Carolina Department of Corrections' policy offered the inmate (1) extractions, but no root canal and crown, at state expense and (2) offered that the inmate could pay for a private dentist if he wanted a root canal), *aff'd*, 280 Fed. App'x 255 (4th Cir. 2008); *Ball v. Johnson Cnty. Jail*, No. 3:03 Civ. 3056, 2004 WL 2338105, at *2 (N.D. Tex. Oct. 18, 2004) (R&R) (the county jail's policy to extract the tooth rather than provide other treatment options did not violate the Eighth Amendment); *Del Muro v. Federal Bureau of Prisons*, No. 5:03 Civ. 214, 2004 WL 1542216, at *3–4 (N.D. Tex. July 8, 2004) (no Eighth Amendment violation where the prisoner was offered extractions pursuant to prison policy and not the crowns or a bridge to which he claimed he was entitled); *Kopera v. Cook Cnty. Bd. of Com'rs*, No. 93 Civ. 3934, 1994 WL 577238, at *4–5 (N.D. Ill. Oct. 18, 1994) (rejecting an inmate's constitutional challenge to a prison policy whereby the Cook County Jail offered only extraction options); *see also Carrizales v. Moore*, No. 13 Civ. 1, 2015 WL 6160191, at *1 (M.D. Tenn. Oct. 19, 2015) (noting that the county jail does not provide root canals); *Kolesnik v. Vail*, No. 12 Civ. 5278, 2013 WL 4401560, at *1 (W.D. Wash. Aug. 14, 2013) (noting that Washington State Department of Corrections does not provide posterior root canals).

Amendment violation. *See Chance*, 143 F.3d at 702 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Mathews v. Raemisch*, 513 Fed. App'x 605, 606–07 (7th Cir. 2013) (affirming summary judgment on inmate's claim of deliberate indifference to his infected tooth where the prison refused to provide him with a root canal procedure but did offer extraction because the "dispute is over nothing but the choice of one routine medical procedure versus another").

In sum, the Court finds that Ciaprazi has offered no evidence that DOCCS dental policy of offering extraction, rather than root-canal therapy, for posterior teeth constitutes cruel and unusual punishment under the Eighth Amendment. Nor is there any evidence that enforcement of that policy against Ciaprazi in any way violated his rights.

### c. Personal Involvement of Commissioner Fischer

Defendants argue that Commission Fischer did not have the requisite personal involvement in Ciaprazi's treatment to subject him to liability under § 1983. Specifically, they note that (1) he never responded to Ciaprazi's letters; (2) he never discussed his dental condition with him; (3) he never reviewed his letters; and (4) Dr. Koenigsmann responded to Ciaprazi's grievance on Commissioner Fischer's behalf. Compl. ¶¶ 46, 53, 71; D'Silva Decl. ¶ 20; Koenigsmann Decl. ¶¶ 8–9. Magistrate Judge Fox rejected defendants' argument, holding that "[s]ince in this circuit personal involvement is found when 'the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong,' *Colon*, 58 F.3d at 873, the fact that Fischer did not discuss [Ciaprazi's] dental condition with him or that Dr. Koenigsmann responded to the plaintiff on Fischer's behalf does not satisfy the lack of personal involvement standard." R&R at 19. But more

9

recent, post-*Colon* authority holds that "mere receipt of a letter from a prisoner is insufficient to establish individual liability." *Bodie*, 342 F. Supp. 2d at 203. For example, in *Sealey v. Giltner*, the Second Circuit declined to extend liability to the DOCCS Commissioner where he merely referred an inmate's letter to another prison official. 116 F.3d 47, 51 (2d Cir. 1997); *see also Joyner v. Greiner*, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("[A] prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so."). Although Ciaprazi sent letters to Commissioner Fischer, Commissioner Fischer did not "act[] on," "review[]," or "respond[] to" his complaints. *Johnson*, 234 F. Supp. 2d at 363. He merely referred them to Dr. Koenigsmann. Accordingly, even if Ciaprazi's claims survived summary judgment, he has not adduced sufficient evidence of Commissioner Fischer's personal involvement to hold him liable under § 1983.

### d. Qualified Immunity

Defendants argue that the doctrine of qualified immunity shields them from liability under § 1983 because "the law is not clearly established that an inmate has the right to root canal treatment rather than extraction." Obj. at 24. Magistrate Judge Fox (and Ciaprazi) would lodge the Court's analysis at a higher level of abstraction, pointing to the clearly established right to adequate medical and dental care. R&R at 19. The Supreme Court, however, has instructed that the qualified-immunity inquiry must be undertaken "in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201; *cf. Petrazzoulo v. U.S. Marshals Serv.*, 999 F. Supp. 401, 410 (W.D.N.Y. 1998) ("[W]hile prison inmates have a clearly established right to dental care, they do not have a clearly established constitutional right to dentures. In other words,

10

while inmates cannot be denied a minimal civilized measure of care, they do not have a clearly established right to receive their preferred course of treatment.").

Defendants here could have reasonably relied on two lines of cases to conclude that their conduct did not violate the Constitution. First, the Second Circuit has held that "mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 702. Defendants, who relied upon DOCCS policy of extractions in lieu of root canals for posterior teeth, could have reasonably concluded that the choice between those two treatment options did not give rise to a claim under the Eighth Amendment. *Cf. Gomez*, 2015 WL 1054902, at \*10 ("Although extraction of his tooth was understandably 'not Plaintiff's ideal solution, this procedure would have been adequate to solve Plaintiff's [cavity] problems.'" (quoting *O'Connor v. McArdle*, No. 04 Civ. 314, 2006 WL 436091, at \*7 (N.D.N.Y. Feb. 22, 2006))). Second, defendants could have relied upon the numerous cases from within and without the Circuit that have held similar policies to be constitutional. *See, e.g., id.*; *James*, 230 Fed. App'x at 197–98; *see also* footnote 4, *supra*. From these cases, the Court concludes that even if DOCCS policy were unconstitutional, Ciaprazi has not adduced evidence that defendants "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Accordingly, defendants are immune from liability.

11

**III.   Conclusion**

The Court does not adopt Magistrate Judge Fox's R&R dated March 29, 2016, but rather GRANTS defendants' motion for summary judgment in its entirety. The Clerk of Court is directed to enter judgment in defendants' favor and to close Case No. 13 Civ. 4813.


Dated: New York, New York
       September 6, 2016

                              SO ORDERED

                              PAUL A. CROTTY
                              United States District Judge